We will give you 30 seconds to collect yourself because the next case is also Home Semiconductor v. Samsung and that's Case 2016-22-15. So when you are collected and ready, Mr. Coffman, we will be ready. Once more into the brief, may you please the court. We have fewer issues in this case. There are really only two points to be discussed. One is the construction of the term over and whether the board's construction of the term over is so broad as to be unreasonable in the context of the patent specification, which we submit that it is. And the second is even under the board's construction, there is no substantial evidence to support its conclusion that sidewall filaments 11 are the oxide layer. Talking about the first point, I understand that you say that it doesn't matter whether it's a point of novelty in the patent or not, but I have a question about what exactly is the purpose of forming the oxide layer because you are eventually going to remove it or at least remove a substantial portion of it. These layers get formed and removed during various process steps to protect the diffusion area from things that are going on during the process. These are multi-step processes and ions are being implanted and layers are being formed and removed. Sometimes you just need a layer put on to protect something and you put a layer on, you conduct some processes, you remove the layer, you fill the trench with a conductor so that you can conduct the semiconductor portion of the gate. It's just part of the semiconductor processing that protective layers get put on and removed. Then things like sidewalls stay in order to provide electrical isolation so that you don't have short circuits. There are all sorts of physics involved in it. The critical piece is that it still stays on the sidewalls. Correct. Let me ask you a couple of questions here. Part of it is me trying to understand again what your claim of construction really is. You're not saying it has to be directly on top of the diffusion area? Not in the sense that it can't have intervening layers, no. If my hand were the size of the notebook, I would say that my hand is over the notebook if it covered the entire notebook, even though the notebook may exist between my hand and the podium. It doesn't have to be in direct contact. There can be a layer in between and it still covers. It still is consistent with our construction. But you also disclaim entire coverage. Despite the fact that in your blue brief almost everything you cite talks about the entirety of the surface, by your gray brief you are disclaiming entirety of the surface. I think we say effectively cover the entire surface. There's some wiggle room around the edges. I'm not suggesting that my hand is covering the podium because it is not covering the podium. There are substantial elements of the podium that are exposed. Are you saying that if your hand is where it is now, but higher than the notebook, that is not above in the terms of the pattern? Under the terms of the word above, I would say if my hand is here above the podium, that it is above the podium, but is not above the notebook. It is displaced laterally. It is higher in elevation than the notebook, but it is not above the notebook. That's where the board's claim construction, I think, goes wrong and becomes excessively broad. It contemplates not only the notion of something that is covering, is located on top of, we're dancing around a relatively simple word here. The word is above, it's not cover. The word is over. The word is over. I'm sorry, but it's not cover. It's not cover, correct. Cover is our construction, above is the board's construction. But again, your construction is not completely cover or totally cover. It's just any kind of, like could it cover an inch of it? We're dealing with things that are sub-micron sized. Covering an inch of it would be sort of an oversimplification. Right, but it's a micron size. But assume that you extrapolate out to something this big, like you're doing. So could it cover this much? I would say it has to effectively cover the entire service, but if there are gaps at the sides or if there's stuff remaining at the sides, that's not. And so where in the specification do you get that? And so, for example, most of the- Effectively cover, but not completely cover. And it's through the usage in the specification. And, for example, they point to figure 2D, so that's probably the best example that we would say, where it's talking about removal of an oxide layer over the diffusion region. Why are you so worried about saying cover means the entire region, just out of curiosity? There's got to be a reason. Somebody maybe doesn't have the whole thing covered somewhere or something. Figure 2D, right? Figure 2D. So if we talk about the prior art, and that's the Doshi reference, there are filaments 11 in the prior art that are, contrary to the board's finding that they're made up totally of an oxide, they're made up of an oxide and a nitride layer. And Samsung has presented evidence that suggests that inside this filament 11 there is a portion of oxide that barely covers the edge of the diffusion region. And that's not what the patent's about. That's not what the oxide layer is about. But they're saying because it covers this tiny sliver, it is over the diffusion region, and that's why. So where is the coverage in figure 2D? So figure 2D is actually the absence of coverage in the sense that the specification refers to removing an oxide layer over the diffusion region. The diffusion region is region 58, Your Honor. Right. And at column 3, lines 17 through 20, the found at appendix 48, it describes that the portion of layer 62 over the diffusion region is removed. And so if you look at the prior figure, there's coverage of the diffusion region, and this then shows what happens when the portion over is removed. Virtually all of the layer is gone, but there's a little bit of overhang on the sides. And so that's why we have to say that it's not completely covered in the sense that there would otherwise be this inconsistency. So that if over meant over the whole of it, when you remove anything that's over it, then you would have to be removing all of it. Yes. If we're using over the same way and we're talking. So where does the word substantially cover up here in your briefs? I'm not sure, but I can't point to a specific page. All right. Turning then to the question of filament 11 and whether there's substantial evidence regarding filament 11 and whether it's oxide, the board, in its opinion, concluded that filament 11 was the oxide layer, and in making that conclusion that said under its construction of over, that limitation was met because there was the oxide layer that was over the diffusion layer and the oxide layer was filament 11. But the problem is the board's conclusion that filament 11 is the oxide layer is not supported by substantial evidence. But you concede that if it were an oxide layer, that it is at least partially over the diffusion region. I would concede that if it were an oxide layer under the board's construction, it is above the oxide layer and thus yes. The problem is that the board said that filament 11 is an oxide layer and the specification and the expert testimony all clearly says that filament 11 is a mixture of an oxide layer and an nitride layer. There's an oxide layer formed and then a nitride layer formed and then there's some etching and that results in filament 11. So filament 11, whatever it may be, is not an oxide layer. So your argument is that Doshi simply doesn't contain an oxide layer? No. My argument at this level is that filament 11, there's no evidence that filament 11 is an oxide layer and that Doshi does not teach that filament 11 equals oxide, which is what the board found. Now, that was a very factually intense dispute before the board, right? And the board made the finding that filament 11, the sidewalls do contain an oxide layer. But they made the finding that filament 11 is the oxide layer. If they made a factual finding that filament 11 was a mixture of oxide and nitride that contained an oxide layer that overlapped the diffusion region, we wouldn't be here and I wouldn't have made the point. But that's not what they found. And so there was evidence, but the evidence doesn't support, and there's lots of evidence that was cited by Samsung in their brief and it was before the board, that there's this oxidation step and then there's a nitridation step and that filament 11 is a combination of the two. Filament 11 is not an oxide layer. But that's what the board found, filament 11 is an oxide layer. But silicon nitride is then deposited overall. Doesn't that override any oxidation, any earlier oxide layer? I'm not sure. The silicon nitride layer, if I'm understanding your question correctly. I'm trying to read Doshi. Doshi. Doshi was the other case. Yeah, Doshi. A layer of silicon nitride is then deposited overall. Right. So a silicon nitride layer is formed over the entire wafer, including over the oxide layer that was formed by oxidation of the side of the gate. And then there's an etch step that is performed that removes the silicon nitride layer from the flat surfaces and leaves filament 11 in place. And filament 11 is then a mixture of oxide and nitride. And if the board had made that finding and had said, within the oxide and nitride layer there is an oxide layer that overlaps, there would be evidentiary support for that. But that's not the finding that they made. And because the finding that they made is not supported by Doshi or the expert testimony, there's no substantial evidence to support it. With that, unless there are any questions, I reserve the balance. We will save the remainder of your time. Is it McKeon? Yes, McKeon, Your Honor. McKeon, right. And it's Mike, so we can have a clear distinction. Not Craig. Yeah, that's right. Well, good morning. May it please the court. I'd like to add there's two issues on appeal. I want to start with the claim construction issue. And to borrow Judge O'Malley, your phrase earlier this morning, their construction has been a little squishy for the board. And even here, we're getting different moving parts on that. And certainly in the blue brief, it seemed to be pretty clear. When they said for avoidance of doubt, covering means covering the entire relevant region. Then in the gray brief, they take a shot at us for saying, hey, we're saying completely. But entirely, completely, one thing is clear. They need, if it's just cover, then they go nowhere. Doshi anticipates. And that's footnote 3 at page 10 of the board decision. It's got to be cover plus, cover plus entirely, completely. Because of the fact finding the board made on doshi, they've got to have it all. And there's just no support for that in this record. Why doesn't the plain meaning of cover indicate substantially all? If my son Matthew is laying on the couch and I cover him with a blanket, I'm not putting his head under the blanket. I'm covering the majority of his body, and that's my common understanding of the term. That's what I think it means. If I only put it on his foot, I would not say the blanket is covering Matthew. And that's what you have here. You have doshi only putting it under the foot, under the sidewall. That's the only place where you still have the remaining oxide layer over a tiny portion of the diffusion region. You're covering my son Matthew's foot and telling me that's covering Matthew. Well, first of all, I don't think you get to that question because I think the proper construction is what the board found. But say I'm right. Answer my question. Well, if you're saying what they said this morning for the first time in this case, which is substantially. No, they didn't say it for the first time. They also said it in their great brief. Well, substantially, if it's something substantially, then where's the line? And we're going to get into a metaphysical debate about where's the line. But one thing we know is that the board found that filament leaven, part of that filament leaven is the oxide. And the word is over, not cover, right? Well, the word in the claim, of course, is over. And the board found that under the broadest reasonable interpretation of that language, over, it's above. And the board looked at figure 1B of the patent and kind of walked through it. And if you look at the specification, when you talk about 1B, you have this conformal layer, 22. But here's what bothers me about the board finding it means above. Everybody agrees, there is no dispute, that the plain meaning of the word over could be either above or cover, right? That's correct. Everyone agrees with that. And that's very common. We have lots of claim construction cases where the plain meaning in the abstract, and I don't mean the abstract of the patent, I mean in the abstract, could be multiple things. Then you have to look at the specification to see which of these plain meanings make sense in light of this specification. And let me give you another example because, you know, the technology here, I don't find it very complicated, but it is kind of complicated. The word above, a plane flies over the land. Clearly, you mean above. You don't mean the plane is covering the land. And that would make no sense. You know, but the blanket and my son, the blanket's not above Matthew, if it's over Matthew. Put the blanket over Matthew. The blanket's not above him. No one would think that, oh, I can similarly say the blanket's above Matthew. Well, in the broadest sense of the word, it is above, right? I mean, it is above him in the broadest sense of the word. Not in the reasonable sense of the word. And it has to be the broadest reasonable sense of the word. That's true. So I don't think that that's reasonable. And I think when you have two plane meanings, you have to look at the spec and say which one of these two plane meanings was meant to apply. In some cases, it's clearly one, like the plane example. The plane's not covering the earth. It's above the earth when you say over. In other senses, with Matthew, the blanket's not above Matthew. It's covering Matthew if you say the blanket's over Matthew. So which one of these feels like the right application here? Tell me why it should be above. Well, I think, Your Honor, when you go through the intrinsic record here, put aside for a moment what the expert said. But go through the intrinsic record that the board looked at, looking at the language, looking at the fact that this particular element wasn't critical to the invention in any way. So it deserves its full breadth. That language deserves its full breadth. Then when we look at the word over, in the context particularly of the semiconductor arts, when we're dealing with layer upon layer upon layer. So when they walked through figure 1B, and they did that very carefully in their opinion, walked through figure 1B, and they looked at the different layers that were formed. And you had conformal layer over the substrate. But there was multiple intervening layers in between that. So when we talk about semiconductor arts, we're looking at this dimension. We're looking at one above the other. We don't have to really care about intervening layers here. I mean, yes, he's disclaiming having to touch. But he just conceded to me a few minutes ago that if the filaments of Doshi are oxide layers, that they are covering a portion of the diffusion layer. Now, they might not be covering the whole thing, but they're clearly covering a portion. Which is why he felt it was important to dispute the board's finding with respect to whether or not it's an oxide layer. It's a filament. So why don't you answer that question for me? Well, I mean, certainly on the fact question, Your Honor, if you're talking about the fact question, we have a situation where we have competing experts, competing experts for the board. And our expert walked through the Doshi reference and explained with respect to Doshi what was going on there. And if you look at the specification on this, it's very clear. And the board cited this, too, at column 7, line 52. It says sidewall filaments 11 are formed by first oxidizing the sides of the polysilicon layer 22. That's right in the specification. And the board looked to that and looked to our expert. Well, yes, there's oxidation first. And I think that, you know, your friend on the other side conceded that. It says that sidewall filaments are formed by first oxidizing the sides of the layer. But then it says a layer of silicon nitride is then deposited overall and then etched to remove the nitride from flat surfaces. So the question is, are we talking about an actual oxide layer? Are we talking about something that is a combination of oxide and nitride? Well, it's a layer. And what happens is you have the oxidation that occurs. That side of the polysilicon layer is oxidized, and the oxygen forms. And it's sort of like when you leave your – when your kids would let their bicycle outside and you had the rust on top of it. Same effect. It's an oxidation. And then on top of that, you have the nitride layer. So you have this part of it. Part of it is the oxide, and part of it is the nitride. Together, they make up the filament. And that's what the board found. Is there a distinction between oxidizing the sides of something and creating an oxidation layer? Well, it is a layer, of course, going down the side of the polysilicon 22. It is a layer, and, of course, it has a dimension. And as I believe my colleague conceded this morning, it is above the diffusion region at that point when you have a dimension going into the filament. And even outside the blue region on our page 12, they say this. The board concluded that the relevant oxidation layer is located as part of the filament 11. That's exactly what the board found based on the disputed expert testimony. They looked at Samson's expert and found that his testimony comported with the specification, that key paragraph that we talked about earlier, and how that filament is formed. Once you've concluded that that filament 11 is part of or includes a component that is the oxide layer, then that's it because it's above. Does it matter that the oxide layer is going like this instead of like this? Well, I mean, there's going to be dimension, Your Honor, in that vertical direction, if you will. So it's going to be above. We're dealing with angstroms here. All this stuff is small. So it's very small molecule kind of level things, but it is above, and it satisfies the claim that was just construed by the board. Do you agree with the other side that in fact what's important ultimately at the end of the day is that there is some oxide on the sidewalls? Well, I think that was a fact finding that was addressed by the board. They found that that oxidation occurred and that that filament did include, did have a component. I'm not talking about that. I'm talking about what's important in terms of making this work. Having that oxide. Oh, you mean for the invention? Yes. For the patent invention. You know, it's a step in the claim. There's not a lot of discussion about it in the actual specification. And there wasn't a lot of discussion in the prosecution history about it, the original prosecution history. It's just an element. It's required. And it is, as counsel noted, washed away as a final step in the process. But there's not a lot of discussion about the relevance of that step and how important it is. Certainly, it's not described that way in the specifications. That's clear. Okay, looking at 2D that you rely on a lot, and apparently what caused the gray brief to sort of run away from the complete leak covers, even in 2D, it's still most of it that gets removed. Well, you know, Your Honor, 2D I think you can look at it in two different ways. I mean, we believe that it actually helps our point in terms of having their completely covered. Because, you know, the statement in the specification is that, let me just quote it to you, because I think it is an important point that both sides talk about in their briefs. Yeah, but he doesn't argue completely cover anymore. So you don't need to shoot down the straw man that doesn't exist any longer. Yeah, well, you know, substantially, so now we're having a question whether substantially was left is substantial or not, Your Honor. Well, it's clearly not substantial. There's no way it's substantial. So let's not even have that question, because you've got a sliver of oxide over the sidewalls. But why don't you turn, if you would for me, to claim number nine, which is what's at issue, and the element B. Because you've really made me hone in on the claim language, which is useful, but I think not helpful to you right now. So this is a hostile, not a friendly question. At element 9B. 9B. Yeah, that's the element we're talking about, the one with the word over, right? Yes, Your Honor. This is the one at issue. It says, forming an oxide layer over the diffusion region. And then what does it go on to say? And on the sidewalls of the gate. Okay, so the oxide on the sidewalls of the gate is expressly covered by the second portion of that claim limitation. Under your construction, if that were all that was necessary to be over the diffusion region, the first portion of that claim would be entirely superfluous. Because this claim requires two things. Forming an oxide layer over the diffusion region and on the sidewalls of the gate. And you're saying the prior art reference, which has it only on the sidewalls of the gate, is enough to satisfy both of those elements, which are two discrete elements under this claim. Well, Your Honor, I mean, that has a dimension to it. So there is a dimension to that oxidation that occurs. And the patent doesn't deal with that. This particular 997 patent doesn't describe what the dimension is. And the prior art dosha doesn't either. So there's a dimension to the oxidation layer. There's no doubt about it. And in the dosha reference, in the prior art, when we're oxidizing that polycyclic layer 22, you're going to have some dimension there. It's not addressed. Our expert. I don't understand how this responds to my question. Mine is one of claim construction, and I don't understand why your dimension argument has any relevance. I'm saying you are trying to read out half of this claim limitation by virtue of your construction because forming an oxide layer over the diffusion region, if you're saying forming it on the sidewalls is good enough, then the entire first part of that claim is superfluous, and it shouldn't even be here. You've rendered it redundant. Your Honor, I don't believe that's the case. I mean, you have to have the claim that both are required. Certainly, that is the case. You've got to have both. And so you have it on the sidewall. What does dosha have? How does dosha have both? Well, I mean, I think what the expert said was that when that oxidation occurs on the polysilicon 22, you have growth occurring on that sidewall. And it comes out to form part of the filament, 11. But this is the same thing identically in this patent. If you look at the patent, you can see the oxidation on the sidewalls extends over the diffusion region on your logic. So clearly, in every embodiment, the oxidation on the sidewall extends over the diffusion region in these embodiments. If that's what the patentee meant when he said forming an oxide layer over the diffusion region, he wouldn't then need the second half of that claim element and on the sidewalls of the gate electrode by thermal oxidation. It would be rendered redundant because in this patent, when these terms are used, he felt it was necessary to explain that two things have to happen. You've got to have oxidation on the sidewalls, which in every embodiment results in that oxidation being over a portion of the diffusion region. But then he went on to say and forming an oxide layer over the diffusion region, which implies something more than just oxidation on the sidewalls as disclosed in this patent. I agree with that. I guess my point is when you look at dosha, when you have that… Remember, it's on the sidewall, but it's growing over the diffusion region. Correct. That's true in every embodiment of the patent. And that's true in dosha as well. Yes, and that would definitely meet on the sidewalls of the gate electrode portion. Just one final point on that, if I may. There is an alternative testimony that the board did not rely on, on the point about going over the entire diffusion region that are actually put into the record. And if the court disagrees on the construction, then it requires a remand. That's only if we disagree on the construction and conclude it requires the entire region. That's the only reason we would have to remand. If we think it means a substantial portion, there is no testimony. I've read the record. There's no testimony that would suggest that dosha covers a substantial portion of the region. Well, Your Honor, I don't believe that's correct. Our expert testified as an alternative, looking at it factually on dosha, that when that sidewall oxidation occurs, it's actually occurring across the diffusion region. Despite the fact that the dosha picture shows no oxidation in the center, it only shows it on the sidewalls. Your expert said, nonetheless, it would be. When you go through that polysilicon layer, oxidizing that polysilicon layer 22, it would occur across the entire region. That was the testimony. Even though it's not presented in the picture? It's not shown in the picture. But our expert said, as a matter of technical fact, that would occur. And that was an alternative ground. The board didn't address that. And both sides agreed that a remand would be appropriate. They never argued substantial portion below. They never argued that below, as far as I can tell. They didn't argue it until this morning. It's not even in the Grayberry. I didn't see it in the Grayberry. I think we can say your argument time is now over. Mr. Kaufman has a little rebuttal time. Thank you, your honors. Starting first at the end there, where the question of remand, we did concede in the Grayberry that remand would be appropriate if you adopt our claim construction. And we don't change that position. There were alternative facts presented to the board that were not ruled on. We would disagree with Mr. McKean's characterizations of them. But the board made no factual finding on that point. And so, in the absence of any factual finding, this court has to send him back, I think. Turning to the overpoint, it is indeed correct that both above and cover are alternative dictionary meanings. But the dictionary meanings need to be informed by what's in the specification. And if you look at page 18 of our brief, we have numerous citations, all of which refer to the structures and descriptions and use of the term over as showing structures that cover a relevant region. Can you point to me anywhere below, or in the blue brief, or in the gray brief, where you proposed the concept of substantially over. Substantially cover as your definition of the word over. The only place that possibly could show up is where I responded to pages one through two. Where you say construction doesn't mean completely cover. Right. So you don't say substantially, but you say it doesn't mean completely cover. It doesn't mean completely, yes. So I never used the word substantially. No, Your Honor. That I can see. And you still refer to the entire relevant region. Yeah. Just not the whole diffusion region. But the entire exposed region, the portion that is exposed over the region is uncovered. You haven't mentioned on top of. I have not mentioned on top of. No. No. But if you look at page 18, there are a wealth of examples where the term over is used to describe something that covers a layer below. Unless there are any other questions. Thank you. We will take the case in revising. Thank you, Your Honor.